We'll hear the next case, United States v. Michael Elder. Good morning, Your Honors. Dwayne Sam for Appellant Michael Elder. With the Court's permission, I'd like to present my colleague, Dixon Wallace, from the William and Mary Law School to present oral arguments. Usually you should do this in advance, but it's okay. Good morning, and may it please the Court. My name is Dixon Wallace, and I'm here on behalf of Michael Elder. In 2016, three DEA agents and six probation officers entered Michael Elder's home, handcuffed him, and executed a warrantless search of his residence. No emergency justified this search, and Mr. Elder did not contend to it. Instead, the search was based only on four anonymous, uncorroborated tips. This was an illegal search, and its fruits must be suppressed. As both the Eastern and Western districts of New York have held, neither this Court nor the Supreme Court has ever upheld a home search of a supervisee absent either reasonable suspicion or a clear and unambiguous waiver of the right against suspicionless searches. To me, Mr. Wallace, isn't that the fundamental issue here? In other words, I think you can correct me if I'm wrong, that you would concede that as long as there was proper notice given that, based upon the Supreme Court's decision in Sampson, and our decision in Reyes, that you can have a suspicionless search of a person on supervised release as long as the person, under their conditions, has notice, correct? I disagree, Your Honor. In Sampson v. California, the State of California enacted a statute clearly and unambiguously subjecting each parolee to searches with or without cause. So that's one of my questions. It's an issue of notice. Now, it's not a question of whether or not the Fourth Amendment permits this. It's just a question of whether the person has notice of it, right? Well, Your Honor, here, Mr. Elder's agreement is completely silent as to suspicionless searches. To read a suspicionless search clause into the— No, but in Reyes, we said it was a home visit, but there was no provision in it that said with or without cause. It said you can do a visit at any time. It didn't say with or without cause. So I don't think you have that with or without cause in the language, right? Well, Your Honor, in Reyes, this Court was deciding on a home visit, which this Court expressly stated is a far less intrusive form of supervision than searches. My point is, with regard to what level of notice has to be in the provision, that the words with or without cause are not necessarily—aren't necessary for a person to know that they could be subject to a search for any reason. Well, Your Honor, I would add that the only other signatory to this agreement, Mr. Elder's probation officer, himself testified in federal court his understanding that he needed reasonable suspicion before searching Mr. Elder's home. In United States v. Vaville, this Court— Just look at the words of the condition. Defendant shall submit to a search of his person, place of residence, etc. The plain wording, it doesn't require reasonable suspicion either, right? Well, Your Honor, again, neither this Court nor the Supreme Court— Do the plain words—do the plain words require suspicion? Yes, Your Honor. To read a suspicionless search clause into this agreement in silence is to abrogate Mr. Elder's fourth amendment rights without informing him or obtaining his consent. Then what is he conceding? What is he waiving? Can you repeat your question, Your Honor? And if you still need reasonable grounds, what is it he's waiving when he says that he will submit to a search? Well, Your Honor, the standard—the general standard for home searches is that they must be based on a warrant. Here, the search clause lowers that reasonableness so that he can only be searched on reasonable suspicion. But in the absence of any limitations, I think Judge Chinn's question really points to the fact that there's no limitations. It says here, you shall submit to a search of your home. If there's no limitations, wouldn't a reasonable person believe? There are no limitations. It could be at any time for any reason. Well, again, Your Honor, I'd point to Probation Officer Dykeman's testimony. But he may have been under misunderstanding what was required. So it's not his subjective belief of what's required. It's looking at the words. In other words, let me give you an example. You shall submit to drug testing. You're on supervised release. You shall submit to drug testing. It doesn't say with no suspicion at any time. It just says you shall submit to drug testing, right? The person understands if there's no limitation, that means it can be at any time for any reason. Well, Your Honor, I would point out that this was a search of the home, which receives the most robust Fourth Amendment protections of any institution. But if your client's looking at that language, when does he think the search can take place? If it says you shall submit to a search, what does he think the limitation is? In his mind, when did he think he was subject to search? What was the limitation he thought would exist? Well, Your Honor. Looking at that language. Your Honor, I would also point to the federal supervised release statute, which allows courts to impose a search clause upon reasonable suspicion on registered sex offenders. Given that registered sex offenders are commonly subjected to the most intrusive supervision of all offenders, it only makes sense that regular offenders would at least get a reasonable suspicion standard. Again, the sole person to explain the conditions to Mr. Elder himself testified as to his understanding that the agreement required reasonable suspicion, Your Honor. As this court stated in United States v. Babel, this court interprets plea agreements, which are contracts of adhesion, against their drafters. Supervision agreements are also contracts of adhesion. They require individuals to abrogate rights. So here the court would have to interpret the agreement against the drafter, the government. And finally, Your Honor, there was no reasonable suspicion to search Mr. Elder. The magistrate and district judge both correctly held that the tips lacked any indicia of reliability. It's not clear that the government is actually contesting the issue of reasonable suspicion, but the four anonymous uncorroborated tips could not amount to reasonable suspicion. There were no predictions of future movement, and it was not even clear whether the tips came from one or more persons, Your Honor. For these reasons, Mr. Elder respectfully requests that this court reverse the district court opinion and remand with instructions to suppress. Unless the court has any further questions, I'll rest. Thank you. We'll hear from the government. Good morning again. May it please the court. For the record, I'll introduce myself again. It's Tiffany Lee, and I represent the United States. The central issue here is whether or not the search of Michael Elder's residence was reasonable. The Warnwood search was reasonable under the tenets of the Fourth Amendment. And based on the case law, beginning with Griffin and then culminating with Reyes and Sampson, it's the government's mission that the analysis begins with looking at the totality of the circumstances, looking at whether or not the individual has a legitimate interest in his privacy rights, and then balancing that against the governmental interest for making the intrusion. And as Judge Bianco has pointed out, it doesn't necessarily turn on notice, but the notice is a factor to be weighed in the totality of the circumstances here. The totality of the circumstances are Michael Elder was on supervised release. Second, he signed a condition. And this is where the government disputes, I guess, the characterization of the agreement on supervision. The appellant here has made arguments that it's like a contract. It's not. It's a court order. The court orders these conditions of supervised release to be followed as part of its sentence. In the Sampson case and the Reyes case, there could be an argument that even without notice it might be permissible, but certainly both of those cases thought the notice was a critical element of the diminished expectation of privacy, right? Correct. Correct. And so that's why, you know, in addition to that, so in addition to him, to Michael Elder being a supervisee of a release, he has this condition. And the condition states, you know, that— I'm a little—I'm trying to get back to the ones I've seen as a district court. I don't think I've ever seen a provision that did not have the reasonable suspicion language in there. I think the standard search condition does have the reasonable suspicion element to it, and I think that's why the probation officer at the hearing thought that it was in there. So I'm just—is this—why—what was it about this case that it was not in there? Well, just to add to that, the administrative guidance is that you have to have reasonable suspicion. And, Your Honor, I don't know. You know, the answer is I don't know. Certainly the conditions of supervised release, the special search conditions I've seen, you know, have that language in it. It is anomalous that although that provision does only refer to sex offenders, that for the sex offender cases you have to have reasonable suspicion, but in other cases you don't. Isn't that somewhat anomalous? It—you know, I will say it does appear to be an anomaly, but the reality is Michael Elder did not challenge this at the time that he was originally sentenced. He did not say anything saying, wait a minute, how come there's no reasonable suspicion language on this condition of supervised release? So the time for that argument is past. So the issue here is was the search reasonable under the Fourth Amendment? And it's the government's mission that with SAMHSA and with all the totality of the circumstances, what you have here is a parolee or, excuse me, someone on supervised release who signed off on a condition that said that— that didn't say anything about reasonable suspicion. And in any event, when looking at the probation officer's actions, it's not as if Officer Dykeman was, like, walking along Edgewood one day and said, oh, you know what, I feel like doing a search. There may be a reasonable expectation of an unannounced visit from your probation officer, but this was different because there were nine law enforcement officers who showed up. I mean, it was a full-blown search. Is that something that a supervisee reasonably would expect without reasonable suspicion? This one, by the terms of the conditions of supervised release, could expect it. So whether or not it's something a supervised—someone on supervised release should expect, the fact remains is Michael Elder, as of July, knew that there was a search condition that didn't say anything about requiring reasonable suspicion. But both Knights and SAMHSA had words to the effect that with or without cause, right? True. We don't have language like that here. But, you know, Reyes didn't really talk about with or without cause, and at the end of the day— Reyes was a house visit. True. But then SAMHSA also said, you know, because in—the SAMHSA majority stated that, really, the fact that there's little to no reasonable suspicion is of little relevance to the question of whether or not, you know, the warrantless search in California is reasonable under the Fourth Amendment. So we have these—we have an Eighth Circuit case. We have a Tenth Circuit case that reads the language the way the defense does. Are there cases the other way that are on point as opposed to distinguishable? Oh, you mean reading the language as saying that the special condition needs— Your Honor, I think when you read the statute talking about special conditions, it says, and other conditions, and it really doesn't say—states specifically that all search conditions must require reasonable suspicion language. I don't think any—those Eighth and Tenth Circuit cases didn't stand for the proposition that you can never— you can't have a search without reasonable suspicion, right? Correct. That's not what they're saying. The Ninth Circuit, in a case called Betts—and it wasn't in the briefs, but I did a little research— has applied SAMHSA to a—not a home visit, but to a suspicionless search of a supervised releasee. So you have the Ninth Circuit saying, and there was no with or without cause language there. The Eighth Circuit in Jackson, there was a provision that said in the halfway house, as part of your supervised release, any property possessed is subject to search. So there was no with or without cause. There was no at any time. And the Ninth—the Eighth Circuit allowed a search of a supervised releasee's phone in the halfway house was okay. So there are other courts, other circuits that have found suspicionless searches acceptable, right? And I— Without the with or without cause language, and in some instances, without the any—at any time language.  When Samson was in Samson, the Supreme Court basically said that, you know, that some states and the federal government require a level of individualized suspicion is of little relevance to our determination whether California's supervisory system is drawn to meet its needs and is reasonable, taking into account a parolee's substantially diminished expectation of privacy. Why didn't the government argue—the district court noted in a footnote that the government didn't argue that even if there was an issue here, that the exclusionary rule shouldn't apply here, that this is not a situation where you would—you need to deter the probation officer where, at best, there was no language in there limiting the search, and the probation officer believed he had a reasonable suspicion anyway and was acting in good faith. Why didn't the government make that argument that the exclusionary rule shouldn't apply here? I do not know. And, you know, certainly as—standing as the appellate attorney here, I wish that they did. But, you know, certainly, again, going back to the issue before this court, was the search reasonable? What did Officer Dyckman do? Did he walk around the street and was like, you know what? I feel like messing with Michael Elder to go into his house and do a search. No. It was prompted by these tips, whether or not they raised to—in his mind, he thought it was reasonable suspicion, but regardless, they were not the arbitrary and capricious acts of a law—of the, you know— That goes to the issue of whether there was reasonable suspicion in the court found.  But I also believe, Your Honor, it goes to the reasonableness, is looking back at all the totality of the circumstances, the reasonableness of the search. So, you know, pulling back, you have to look at every instance here. Not only does this person have a supervised release condition permitting, suspicionless searches. He knew about it. He signed off on it. He was on supervised release. He already had less rights. But then looking at the government interest, Probation Officer Dycklin's role is to make sure that persons under his supervision are not committing more crimes. The supervised release terms of condition are imposed by the court to ensure that that person, in addition to having already served time in prison, understands that he's still being punished for the bank robberies he committed and that he doesn't have full rights of liberty and that he's being watched in terms of his reintegration into society. And Probation Officer Dycklin, on November 3rd, when he executed the search, it was not baseless. There was something to form the rationale why he wanted to search. The government is not arguing that a supervised release home can be searched at any time without reasonable suspicion. You're taking the more limited approach that in the circumstances here with the anonymous tips, et cetera, that it's not a Fourth Amendment violation. Correct. If that is so, and you just said that's correct, then you're saying that the anonymous tips provide a reason, which sounds like reasonable suspicion, which you're not really arguing, and there's a fact-finding against that. I understand that, but it's just to say that under these conditions, under what happened on November 3rd, the analysis this Court needs to focus on is was this search reasonable under the Fourth Amendment. And you will look at – You're not saying that two, three, or four anonymous tips provides reasonable suspicion. No, I'm not. I'm just saying as a totality of the circumstances, let's also look at the factors in terms of what Officer Dycklin was doing that day and understand that he wasn't performing it in a vacuum, and it wasn't based on his capriciousness or whim that he decided to execute a search. You seem to be establishing a new standard. You don't need reasonable suspicion, but you need more than a whim. I'm not aware that that's a standard. No. I'm actually arguing what I was suggesting before, that the exclusionary rules should apply it because it was close. Yeah, correct. It was close, but that wasn't made below. I know, but when you look at the jurisprudence on Fourth Amendment application, everyone says the touchstone is reasonableness, and how do we get to that? We look at the totality of the circumstances. We look at what is the defendant's legitimate expectation of privacy, if they have it, balanced against the government's interest here. And I'm just saying that in terms of when we're balancing the government's interest, it's not as if Officer Deichmann acted on his own without anything. It's a good-faith argument also. It is. I mean, we're looking at what happened on November 3rd. Was it reasonable? And, yes, I concede Judge Bianco, you know, this is better left as a liaison, good faith, you know. Good faith because the probation officer said he believed it was reasonable suspicion, so good faith doesn't quite fit this. But certainly that the exclusionary rule shouldn't apply to this type of situation. Correct. It would have fit. Correct. Okay, thank you. Thank you. We'll hear the rebuttal. Your Honor, this search was not reasonable under the Fourth Amendment because the tips did not amount to reasonable suspicion. This was based on four anonymous, uncorroborated tips. I'm unaware of any standard below reasonable suspicion. To apply a lower standard is to completely abrogate the Fourth Amendment here. I'd like to reiterate that in Sampson, the Supreme Court held salient the fact that the State of California had, via statute, subjected each parolee to searches with or without cause. That's simply not the case here, Your Honor. No statute imposes a suspicionless search requirement on federal supervisees, and Mr. Elder's agreement does not contain a suspicionless search clause. Additionally, the United States derays. So the government's argument here is that if you look at the big picture, the tips weren't great, but they were there, there were four of them, and there was this condition, and if you look at the overall picture, it wasn't unreasonable for the probation officer to want to go and search this home. So how do you respond to that? Your Honor, the touchstone of the Fourth Amendment is reasonableness. I'm unaware of any standard below reasonable suspicion. The tips here clearly— But the point is this is reasonable. The tips don't rise to reasonable suspicion, but in light of all the circumstances, including the condition, in other words, if this were a situation without conditions, maybe it would be different. But given the conditions, the argument is that it is reasonable. Your Honor, my argument is that because the tips did not amount to reasonable suspicion, the search was not reasonable. To apply a lower standard below reasonable suspicion is to abrogate the Fourth Amendment entirely here. That cannot be the case. What circuit court has found that you must have reasonable suspicion in order to impose a condition on a supervised release, see that you have to have reasonable suspicion? There's no case that has said that, right? And the fact—I don't know if you've read the Betz case that I cited. It wasn't in the briefs, but the Ninth Circuit has come out exactly the opposite way, that under a supervised release term, no suspicion is required. Your Honor, I have not read that case. What case would—are you aware of any case that has said— maybe the first court to say that you must have reasonable suspicion to search a supervised release house, right? Your Honor, I guess I would say that neither this court nor the Supreme Court has upheld a home search of a supervisee absent either a reasonable suspicion or a clear and unambiguous waiver. Here, there was no clear and unambiguous waiver and supervision agreement and no federal statute—unlike in Sampson, no federal statute subjects supervisees to home searches with or without cause. Well, I concurrence, Judge, with a case, U.S. v. Massey, that was decided in 2006, where Judge Minor said that the language of the New York parole waiver, which does not have at any time, or with or without cause, has no distinction with the California language. So to the extent that the Sampson court found that language to be sufficient, at least in that case, Judge Minor, there was no distinction for purposes of the Fourth Amendment. Your Honor, I see that my time has run, but one point. I will say that in United States v. Watts, this court said in a footnote it was comparing language in the New York state parole agreement, similar to the search clause here, stated that it was not as intrusive as that required in the statute in Sampson v. California. Is there any further questions on this? Thank you. We'll reserve the session. Well done.